**SO ORDERED.**

**SIGNED this 10th day of January, 2022.**



Mitchell L. Herren
United States Bankruptcy Judge

---

**DESIGNATED FOR ONLINE PUBLICATION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

IN RE:

PAUL ROSE

               Debtor.

Case No. 21-10094
Chapter 13

## ORDER GRANTING MOTION FOR RELIEF FROM STAY

This Chapter 13 case was filed several years after the divorce of Paul Rose ("Debtor") and Nicole Elam ("Creditor"). The divorce decree awarded the couple's house and Debtor's 401(k) fund to Debtor and directed him to be responsible for and indemnify and hold Creditor harmless for obligations on their joint credit card. It directed the parties to cooperate in seeing that the credit card account was transferred solely to the person responsible for the debt.

1

Creditor alleged that she performed her obligations under the decree, but Debtor did not, leaving Creditor holding the bag for Debtor's credit card obligations. Creditor moved for relief from the bankruptcy automatic stay in order to return to state court to seek to modify the divorce decree. In briefing, she also alleged that Debtor had violated child-support provisions of the decree and asserted that relief from stay is appropriate to provide the state court an opportunity to provide a remedy for those violations.[1]

The Court held an evidentiary hearing on Creditor's motion and then allowed the parties to provide additional briefing.[2] It is premature for this Court to decide the ultimate dischargeability of liabilities that are not yet finally established, and it is a matter for the Kansas state court to decide if the underlying divorce decree can or should be modified. Creditor Elam's motion for relief from stay is therefore granted to this limited extent.[3]

## I.    Background and Facts

Debtor Paul Rose filed this Chapter 13 case on February 15, 2021.[4] Five years prior, Debtor and Elam divorced.[5] No discharge has been entered in the case.

As part of the divorce decree issued by the Sedgwick County domestic court, Debtor was awarded all the equity in his 401(k) account and the couple's marital

---

[1] Doc. 23 and Doc. 50, ¶¶ 9–11.
[2] Doc. 58.
[3] This Order sets out the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 9014(c), applying Fed. R. Bankr. P. 7052.
[4] Doc. 1.
[5] Trial Ex. 1 at 7, Doc. 55 at 9.

home.[6]  Another provision of the decree required Debtor to be responsible for all debts on the joint USAA Credit Card and indemnify and hold Creditor harmless from the monthly obligations on that indebtedness and for all debts incurred by Debtor since the filing of the divorce.[7]  At the time of the divorce decree the credit card debt was around $12,000.  The balance as of the date the bankruptcy petition was filed was over $24,000 as a result of additional charges by Debtor.  The decree further provided, "[t]he parties will cooperate in seeing that the credit card account is transferred solely to the [Debtor]."[8]

Creditor Elam alleged that she fulfilled her obligations under the divorce decree by, among other things, immediately quit claiming her interest in the house to Debtor.  Creditor accused Debtor of not only refusing to pay the credit card debt, but alleged that he also charged approximately $12,000 more to the credit card after the divorce decree and then failed to pay that balance, leaving Creditor responsible as the joint account holder.  Creditor testified the credit card company refused to honor her request to remove her from the account unless Debtor agreed, but that he refused to cooperate to transfer the card to his sole ownership.[9]

Prior to Debtor's bankruptcy filing, in October of 2020, Elam filed a motion in the family law department of the state court seeking to compel Debtor to comply with the divorce decree and requesting that he be held in contempt for failing to do

---

[6] *Id.* at 7.
[7] *Id.*
[8] *Id.*
[9] *See also* Trial Ex. 4, Doc. 55 at 24.

so.[10] The domestic court held a hearing after which it entered an order on January

6, 2021, that appeared to confirm most of Creditor's allegations but continued the

matter to a later date to allow Debtor to consult with counsel.[11] The day before the

continued hearing, Debtor filed this bankruptcy.[12] At the time of filing, Debtor had

neither paid the debt on the credit card, nor transferred the account to his name

alone.[13]

Despite the bankruptcy automatic stay, the state court held the scheduled

hearing on February 16, 2021, the day after the bankruptcy filing.[14] Both parties

appeared with counsel, unlike the previous hearing in which both appeared *pro se*.[15]

The state court issued its order on April 23, 2021, holding Debtor in "indirect civil

contempt," finding that he committed "fraud on the [Creditor]" that was "not

protected by the bankruptcy code" and threatening incarceration if Debtor did not

purge the contempt by September 15, 2021.[16] All of this state court activity after

February 15, 2021, violated the automatic stay and, as such, is void.[17]

Creditor moved in this Court for relief from stay to return to state court to

modify the divorce decree to ensure an equitable division of marital property,

---

[10] Trial Exs. 2 and 4, Doc. 55 at 18, 24.
[11] Trial Ex. 4, Doc. 55 at 24.
[12] Doc. 1.
[13] Doc. 50 ¶ 5; Doc. 52 ¶ 5.
[14] Trial Ex. 10, Doc. 55 at 41.
[15] Trial Exs. 4 and 10, Doc. 55 at 24, 41.
[16] Trial Ex. 10, Doc. 55 at 41.
[17] *See In re Beery,* 452 B.R. 825, 834 (Bankr. D. N.M. 2011) (actions taken in violation of automatic stay are void *ab initio*, not merely voidable), citing *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990); *In re Vazquez,* 606 B.R. 432 (Bankr. D. Kan. 2019) (divorce decree entered postpetition without obtaining relief from automatic stay was void and ineffective to transfer property between wife and husband).

4

arguing that the state court could award Creditor an interest or lien in the house or in the 401(k) account in light of the Debtor's failure to live up to his obligations under the original decree. In briefing, she also alleged that Debtor had violated child-support provisions of the divorce decree and asserted that relief from stay was appropriate to have the state court provide a remedy for those violations.[18]

Debtor does not dispute most of the allegations about how the credit card account and house ownership have been handled but argues that under state law it is too late to amend the divorce decree, that Creditor holds no lien in the house or retirement account, and that the debt Creditor seeks to hold Debtor responsible for is an unsecured, *in personam* debt that is dischargeable in a Chapter 13 bankruptcy.

## II.    Analysis

### A.    Jurisdiction

A creditor's motion to modify the automatic stay for cause under § 362(d)(1)[19] and Rule 4001(a) is a core proceeding under 28 U.S.C. § 157(b)(2)(G), over which this Court has exclusive jurisdiction under 28 U.S.C. § 1334.

### B.    The Stay

The automatic stay is found in § 362. It provides in relevant part:

**(a)** …a petition filed under section 301… operates as a stay, applicable to all entities, of--

---

[18] Doc. 23 and Doc. 50, ¶¶ 9–11. Since the stay does not apply to the continuation of a civil action for the modification of any order for a domestic support obligation, there is no need for this Order to address this aspect of Creditor's requested relief. *See* 11 U.S.C. § 362(b)(2)(A)(ii).
[19] Unless otherwise noted herein, all statutory references are to Title 11 U.S.C., as amended, and all rule references are to the Fed. R. Bankr. P.

**(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

**(2)** the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

**(3)** any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

**(4)** any act to create, perfect, or enforce any lien against property of the estate;

**(5)** any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

**(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

## C.    Obtaining Relief From Stay

The stay remains in effect under circumstances such as those in this bankruptcy until the debtor is granted a discharge or the case is closed or dismissed,[20] or until the Court, on request of a party in interest and after notice and a hearing, grants relief from the stay by terminating, annulling, modifying or conditioning the stay for one of many reasons, one of which is "for cause."[21] Cause is determined by the Court exercising its discretion on a case-by-case basis.[22] The movant bears the initial burden to demonstrate cause exists to lift the stay, after which the burden shifts to the Debtor to demonstrate why the stay should remain in place.[23]

---

[20] §362(c)(2).
[21] §362(d)(1).
[22] *In re Pittman*, No. 19-41057, 2020 WL 859435, *3–4 (Bankr. D. Kan. 2020).
[23] § 362(g); *Busch v. Busch (In re Busch),* 294 B.R. 137, 140-41 (10th Cir. BAP 2003).

Bankruptcy courts often evaluate "cause" using a set of twelve factors outlined in *In re Curtis*.[24] The Court finds these factors to be helpful, and will analyze the applicable factors in considering the stay-relief request at hand. Specifically, the Court will weigh the following relevant factors: (1) whether relief will result in a partial or complete resolution of the issues; (2) whether movant's success in the divorce proceeding would result in an avoidable judicial lien; (3) whether there is a lack of connection to or interference with the bankruptcy case; (4) whether relief is in the interest of judicial economy; (5) whether the divorce proceedings are ripe for trial; and (6) the impact of the stay on the parties and the "balance of hurt."

### 1. Will relief result in a partial or complete resolution of the issues?

This factor captures many aspects of the dispute between the parties. Debtor makes the argument in a number of different forms that granting relief from the stay would be futile, because no meaningful action could be taken by the state court that would change the dischargeability of the credit card debt and Debtor's obligation to indemnify and hold Creditor harmless. These arguments boil down to two main contentions: (1) the state court cannot modify its decree because Creditor's motion was not made within a reasonable time as required by state law, and (2) any modification made by the state court is moot as Creditor seeks modification of dischargeable debt. The Court will consider each of these arguments in turn.

---

[24] *In re Curtis,* 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). *See In re Danzik*, 549 B.R. 804, 808 (Bankr. D. Wyo. 2016) (citing *Curtis* factors); *In re Busch,* 294 B.R. at 141.

First, as an initial bar, Debtor claims that too much time has passed for the state court to modify its decree under KAN. STAT. ANN. § 60-260(b). Debtor argues that under Kansas law, such a motion must be filed within a "reasonable time," and that under such a standard the divorce court now lacks jurisdiction.[25] This argument is unpersuasive for two reasons. One, what is or is not a reasonable time under these circumstances and Kansas law is more properly a question for the Kansas domestic court, not this Court. Two, Creditor's efforts to address this matter in the state court were already underway when Debtor filed his bankruptcy petition, resulting in the stay. This Court is not in a position to rule one way or the other on whether Kansas state law would bar as untimely Creditor's effort to revisit or modify the divorce decree.

Second, Debtor asserts that a return to state court is unnecessary because any modification of the divorce decree will only involve debt that is dischargeable in bankruptcy. Underlying this assertion is Creditor's allegation that Debtor's sole motivation for filing this case under Chapter 13, instead of Chapter 7 was to discharge Debtor's obligation under the divorce decree to pay the credit card debt and indemnify Creditor.

In a Chapter 13 case, § 1328(a) governs discharge and provides that under § 523(a)(5) a debt for a domestic support obligation ("DSO") is *not* discharged.[26] In

---

[25] Debtor also cites KAN. STAT. ANN. § 23-2712 (2019 Supp.), arguing that the state court lacks jurisdiction to modify a separation agreement that was incorporated in the divorce decree. "However, a divorce decree incorporating a court-approved separation agreement is a final judgment, and the prohibition against modifying a separation agreement does not apply when a party seeks relief under 60-260." *In re Marriage of Johnston*, 54 Kan. App. 2d 516, 523, 402 P.3d 570 (2017) (citations omitted).
[26] Domestic support obligations are defined by the Bankruptcy Code in § 101(14A).

8

contrast, in a Chapter 7 case, § 727 governs discharge and provides that not only are DSOs excepted from discharge, but § 523(a)(15) debts, commonly characterized as family law property settlements or division of debts, are also excepted from discharge. These latter debts are incurred in the course of, or in connection with, a divorce or separation but are not in the nature of "support" as in § 523(a)(5).

In Chapter 13, whether the obligation for one former spouse to pay joint marital debt and indemnify and hold harmless the other ex-spouse for that debt is a DSO, and therefore not dischargeable, or a dischargeable property settlement is sometimes a thorny question. Two noted commentators have said, "No type of obligation is more difficult for the bankruptcy court to analyze in determining dischargeability under section 523(a)(5) than a spouse's undertaking to pay joint marital debts or to hold the other spouse harmless from such debts."[27] Judge Berger of this Court put it this way,

> [t]he analysis is difficult when the ex-spouse's obligation is to pay joint debt that is not associated with the parties' former joint residence, such as their joint credit card debt. Whether the requirement that a debtor pay these debts and hold his ex-spouse harmless therefrom and indemnify her qualifies as a DSO or as a division of debts is problematic.[28]

Other commentators point out:

> the overlap between bankruptcy and marital property issues can lead to complex and problematic results because of the competing interests of

---

[27] Henry J. Sommer & Margaret Dee McGarity, Collier Family Law and the Bankruptcy Code ¶ 6.05[5] (2021 Matthew Bender). *See also In re Donahue*, 862 F.2d 259, 262 (10th Cir. 1988) (noting the difficulty in precisely defining the interest of an ex-spouse arising out of a property settlement made during a divorce proceeding).

[28] Robert D. Berger, Bankruptcy and Divorce: A Marriage of Inconvenience, 83 J. KAN. B. ASS'N 2, 32 (2014) (available at https://issuu.com/ksbar/docs/02feb2014jrnl_65bcf926cf43b0).

the bankruptcy court trying to provide an economic fresh start and the state court trying to equitably divide property and debt.[29]

Creditor does not focus her argument on Debtor's obligation being in the nature of a DSO, but instead emphasizes the inequity of Debtor's conduct and the fact that bankruptcy courts in similar situations have sometimes lifted the stay to send such disputes back to the state court. Debtor maintains that since Creditor has no lien against Debtor's property arising from the divorce decree and the obligation is a § 523(a)(15) property settlement, it is dischargeable. The argument continues that since the obligation is dischargeable there is no need to grant relief from the stay to litigate it in state court, since it would be dischargeable regardless of the outcome in state court. Debtor emphasizes that nothing in the divorce decree expressly states that Debtor's being awarded the marital home is tied to Debtor's obligation to pay the credit card debt and indemnify and hold Creditor harmless for it. It is, in Debtor's view, simply an unsecured debt that is fully dischargeable in Chapter 13.

Whether an obligation is a nondischargeable DSO is a question of federal law, and it is not determined by the parties' label of the obligation in the divorce decree.[30] It is a dual inquiry into both the parties' intent and the substance of the obligation.[31] The party seeking to prove the obligation is a DSO bears the burden of proof.[32]

---

[29] Ann Oldfather, et. al., 1 Valuation and Distribution of Martial Property § 13.01 (Matthew Bender).
[30] *Young v. Young,* 35 F.3d 499, 500 (10th Cir. 1994).
[31] *In re Sampson,* 997 F2d 717, 723 (10th Cir. 1993).
[32] *Taylor v. Taylor*, 737 F.3d 670, 676 (10th Cir. 2013).

10

Here, Creditor has not proven or attempted to argue that Debtor's obligations are in the form of a DSO.[33]  Creditor emphasizes the equalization-payment nature of the parties' obligations under the divorce decree.  Indeed, in its present form, the divorce decree provisions concerning the division of personal property, real estate, and debt do not appear to have the purpose of spousal support.[34]

This is not the end of the inquiry, however.  Creditor Elam's plan to seek a readjustment of her rights in the marital home raises additional questions.  The property, properly exempted by Debtor as his homestead, is no longer property of the bankruptcy estate.[35]  Exempt property is generally excluded from property of the estate available to satisfy debts that arose before the commencement of the bankruptcy case.[36]  An exception is when a creditor holds a lien in the exempt property that is not avoided as a judicial lien.[37]  So, the Court must now consider whether there is, or could be, a lien in the homestead or the retirement account that would warrant the parties to return to state court.

Courts in Kansas have recognized the ability of a state court to impose a lien on a homestead and allow a sale to enforce that lien in order to ensure equitable division of marital property.[38]  The Tenth Circuit has also recognized the ability of a

---

[33] A determination of nondischargeability of a debt must be brought as an adversary proceeding. Rule 7001(6).

[34] The decree also provides that "[n]o spousal maintenance shall be awarded to either party." Trial Ex. 1 at 8, Doc. 55 at 10.

[35] *In re Buerge*, No. 11-20325, Adv. No. 13-015, 2013 WL 5656204, at *5 (Bankr. D. Kan. Oct. 15, 2013).

[36] § 522(c). *See also In re Benn*, 491 F.3d 811, 813 (8th Cir. 2007).

[37] § 522(c)(2), (f)(1)(A).

[38] *In re Okrepka*, 533 B.R. 327, 336 (Bankr. D. Kan. 2015) (citing *Blankenship v. Blankenship*, 19 Kan. 159 (1877) and *Bohl v. Bohl*, 234 Kan. 227, 670 P.2d 1344 (1983)).

divorce decree to create an equitable lien in a homestead. In *In re Donahue*, the

Tenth Circuit discussed a number of cases so finding, including cases in which the

divorce decree did not expressly provide for a lien.[39] This Court has previously held

that an equitable lien can arise when a Debtor received the homestead but was

directed by the divorce decree to make an "Equalization Payment" to the ex-spouse,

despite language in the divorce decree that the properties received pursuant to the

decree were "free and clear of any right, title or interest in the other party…."[40]

In addition, Creditor Elam seeks a readjustment of her rights in the Debtor's

retirement accounts. This Court and others have also found equitable rights of an

ex-spouse creditor in situations such as this case to pursue a QDRO (Qualified

Domestic Relations Order) in the state court.[41] A QDRO is an order typically issued

by a state family law court that provides that a former spouse, child or other

dependent is entitled to receive a portion of an account holder's retirement assets.[42]

It is an exception to ERISA's normally strict bar against the alienation of pension

plan funds.

Regarding the readjustment of awarded rights in a retirement account, the

Tenth Circuit affirmed stay relief allowing a debtor's ex-spouse to pursue a QDRO

in the state court, even in the absence of an express QDRO in the divorce decree.[43]

In *Carbaugh*, as in this case, the debtor claimed that his ex-spouse did not have any

---

[39] *In re Donahue*, 862 F.2d at 265.
[40] *In re Okrepka*, 533 B.R. at 311, 336.
[41] *In re Pittman*, 2020 WL 859435, at *4; *In re Jeffers*, 572 B.R. 681, 689 (Bankr. N.D. Ohio 2017).
[42] *See* 29 U.S.C. § 1056(d)(3)(B).
[43] *In re Carbaugh*, 278 B.R. 512, 527 (10th Cir. 2002).

property interest in the retirement account, and therefore the claim was only an *in personam*, dischargeable debt. The Court rejected that argument, also noting it would be inequitable to permit a debtor to prevail under circumstances where the ex-spouse was in the process of seeking relief in state court when debtor filed bankruptcy. Creditor Elam was in the process of seeking relief from the state court for Debtor's alleged failure to comply with the divorce decree when Debtor filed this bankruptcy.

The division of property in this case and the manner in which the divorce decree handled that division might justify a state court finding that an equitable lien exists against the homestead or the retirement account. The lack of express *quid-pro-quo* language in the decree does not necessarily diminish the intent behind the division of property. Nevertheless, this is a decision for the state court to make if it decides to hear the matter. Domestic relations are the exclusive province of states, which have well-developed competencies and interests in the proper implementations of their policies in this area.[44]

This factor leans in favor of granting stay relief so that the state court can consider and, if it deems appropriate, decide or position the issues for a final decision that would resolve the dispute between the parties.

### 2. Would movant's success in the divorce proceeding result in a judicial lien avoidable by the debtor under § 522(f)?

Under this factor the Court considers whether the state court's potential imposition of a lien against the homestead would be an avoidable judicial lien under

---

[44] *In re Hilt,* 175 B.R. 747, 754 (Bankr. D. Kan. 1994).

§ 522(f). The Court need not consider the Debtor's retirement account under this factor, because § 522(f) contemplates avoidable judicial liens as applied to an exempt asset; since the retirement account is an asset excluded from the estate under ERISA, there is no need to consider it here.[45]  Regarding the homestead, the language of the divorce decree currently does not expressly create a lien.  If the state court were to modify the decree with regard to the homestead, it could do so under the reasoning that the decree created an implied or equitable lien in favor of Creditor Elam.  Any lien so created or found by the state court would be in the form of a judicial lien.  The Code defines a judicial lien as a "lien obtained by judgement, levy, sequestration, or other legal or equitable process or proceeding."[46]

As previously discussed, § 522(c) sets out the general rule that exempt property, such as the homestead in this case, is not liable during or after the bankruptcy case for any debt of the debtor that arose before the commencement of the bankruptcy case.  However, § 522(c)(2)(A)(i) provides that a debt secured by a lien on exempt property is excepted from that general rule, if the lien is not avoided as a judicial lien pursuant to § 522(f)(1)(A).  That section provides that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled…if such lien is – a judicial lien."

---

[45] *Patterson v. Shumate,* 504 U.S. 753, 760, 112 S. Ct. 2242, 2248 (1992); *In re Pittman*, 2020 WL 859435, at *4.
[46] § 101(36).

The Court considered this language in the context of a very similar dispute in the *Okrepka* case.[47]  There, Judge Berger explained that a key issue after the United States Supreme Court opinion in *Farrey v. Sanderfoot* is a determination of when the lien was "fixed."[48]

As *Sanderfoot* explained, although many liens and other secured interests survive bankruptcy, § 522(f)(1)(A) permits the debtor to avoid the fixing of some judicial liens.  A principal reason Congress singled out judicial liens was because creditors commonly used such liens to defeat the protection bankruptcy law provides to exempt property.  Section 522(f)(1)(A) prevents a creditor from defeating this protection by simply winning a race to the courthouse and obtaining a judicial lien on the exempt property before the debtor files bankruptcy.  If a debtor possessed the property interest *before* the judicial lien attached to that interest, then § 522(f)(1)(A) makes that lien avoidable by the debtor.  If the lien attached at the same time or before the debtor's property interest arose, then the lien is not avoidable under § 522(f)(1)(A).  Stated another way, the provision is not concerned with liens that fixed on a property interest before the debtor acquired that interest.[49]

The determination of when a lien fixed is a question of state law.[50]  Kansas courts have previously recognized the ability of a divorce court to impose a judicial lien on a homestead and allow its sale to enforce the lien in order to ensure the

---

[47] 533 B.R. 327 (Bankr. D. Kan. 2015).
[48] *Id.* citing (*Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991)).
[49] *Sanderfoot,* 500 U.S. at 297–298.
[50] *Id.* at 299.

equitable distribution of marital property.[51] This Court in *In re Hilt* dealt with the question of when a lien fixes in connection with a divorce decree under Kansas law.[52] It held that the issuance of the divorce decree *simultaneously* granted the debtor spouse her interest in the homestead and the ex-spouse his lien interest in that same homestead.[53] "The divorce, and the adjustment of property interests, are not to be regarded as transpiring at different times, but as contemporaneous."[54] Since the judicial lien arose contemporaneously to debtor's property interest, the judicial lien did not fix to a pre-existing interest of the debtor's, and § 522(f)(1)(A) could not operate to avoid the judicial lien.[55] *Okrepka* held that this finding by the Court in *Hilt* applied even when the judicial lien of the ex-spouse creditor was an implied judicial lien.[56]

Although the state court has not yet determined that a lien on the homestead exists, § 522(f) would not operate under all circumstances to make such a lien avoidable. This factor, therefore, does not thwart relief from the bankruptcy stay.

### 3. The lack of any connection to or interference with the bankruptcy case

Bankruptcy courts have found cause exists to lift the stay to allow domestic parties to return to state court to litigate rights in exempt property, or in property

---

[51] *In re Okrepka*, 533 B.R. at 336 (citing *Blankenship v. Blankenship*, 19 Kan. 159 (1877) and *Bohl v. Bohl*, 234 Kan. 227, 670 P.2d 1344 (1983)).
[52] *See generally In re Hilt*, 175 B.R. 747.
[53] *Id.* at 755.
[54] *Id.* at 754 (quoting *Brandon v. Brandon*, 14 Kan. 342, 345 (1875)).
[55] *Id.* at 755.
[56] *In re Okrepka*, 533 B.R. at 336.

that was never part of the bankruptcy estate.[57]  The homestead, as a properly

exempted asset, is excluded from property of the estate available to satisfy debts.[58]

As such, granting relief from stay to allow the state court to consider relief

requested by Creditor relating to the homestead will not interfere with the

bankruptcy case.

Section 362(b)(2)(B) also makes it clear that the stay does not apply to the

collection of a domestic support obligation from property that was never property of

the estate.  Creditor seeks to petition the divorce court regarding a possible

equitable claim against the Debtor's retirement account as a path to modifying the

property division.  Funds held in plans subject to ERISA (including 401(k) plans)

are excluded from the bankruptcy estate by § 541(c)(2).[59]  The bankruptcy court has

no jurisdiction to determine interests in the 401(k) and granting relief from the stay

for such a determination will have no impact on the bankruptcy estate.[60]

### 4. The interest of judicial economy and the expeditious and economical determination of litigation for the parties

Much of the argument between the two sides in this case has centered on

hypothetical situations, since the state court was interrupted in its consideration of

the issues by the filing of the Debtor's bankruptcy.  It is inefficient and premature

for this Court to make final dischargeability decisions about what the state court

may or may not determine on questions such as its ability to modify the divorce

---

[57] *E.g., In re Pittman*, 2020 WL 859435, at *4; *In re Carbaugh*, 278 B.R. at 527; *In re Jeffers*, 572 B.R. at 689.
[58] *See, In re Benn,* 491 F.3d 811, 813 (8th Cir. 2007).
[59] *Patterson,* 504 U.S. at 760, 112 S. Ct. at 2248; *In re Pittman*, 2020 WL 859435, at *4.
[60] *Id.*

17

decree, whether an equitable lien exists on the homestead or the retirement funds, whether there are other issues such as fraud or contempt at play, or any other related action the state court might deem appropriate. The state court has not made any binding decisions on these issues yet as they relate to Creditor's efforts to alter the division of property of the marital estate. Judicial economy weighs in favor of allowing the state court to consider these issues as it deems appropriate.

### 5. Whether the divorce proceedings have progressed to the point where the parties are prepared for trial

The divorce proceedings are at a point where these issues are ripe for briefing and, if deemed appropriate by the state court, an evidentiary hearing and ruling.

### 6. The impact of the stay on the parties and the "balance of hurt"

No discharge has been entered in this bankruptcy. Creditor remains under a cloud of uncertainty about whether she will be ultimately held liable for debts accrued by the Debtor, allegedly incurred in violation of their divorce decree. Debtor's liability is also up in the air. Both parties would benefit from having the state court make determinations that would lead to clarity either in that court, or if necessary at a later time, in this Court.

## III. Conclusion

Exercising discretion and evaluating the *Curtis* factors, the Court concludes that cause exists to lift the stay to allow Creditor to seek relief in the state divorce court relating to the divorce decree. It is for the state court to decide if it has the ability under Kansas law to modify the divorce decree or take other related action.

18

Questions for this Court may or may not exist after the state court considers the issues presented to it.

Creditor Elam is granted relief from the automatic stay to proceed in state court to seek modification of the divorce decree. The Court waives the 14-day stay of this Order pursuant to Rule 4001(a)(3). It is so ORDERED.

# # #